LOUIS CHRISTMAN, Plaintiff, *v*. UNION RAILWAY COMPANY OF NEW YORK, Defendant.

Supreme Court, New York County, July, 1923.

Verdict — when not excessive — personal injuries — collision between fire truck and one-man type of trolley car — proper for jury to consider features of operation of car — motion to set aside verdict denied.

Plaintiff, a member of the fire department, was severely and permanently injured in a collision between a one-man type of trolley car and the fire truck upon which he was riding. In an action for personal injuries he recovered a verdict of $50,000 against the defendant. Defendant moves to set aside the verdict. In denying the motion, *held*, that while the verdict is large it is not comparable with plaintiff's injuries, suffering and lost opportunities; that the jury was properly allowed to consider various features of operation of the car which struck the truck, and plaintiff's counsel was within his rights in calling the jury's attention to the difference in command of view and in control of operation between the car in question and the conductor type of car.

*Supreme Court, July, 1923.* [Vol. 121

MOTION to set aside a verdict and for a new trial.

*Thomas J. O'Neill,* for plaintiff.

*Alfred T. Davison (A. C. Mayo,* of counsel), for defendant.

GAVEGAN, J. This is a motion to set aside the verdict of the jury and direct a new trial in an action for personal injuries due to a collision between a fire truck and a trolley car at One Hundred and Forty-first street and St. Ann's avenue, borough of The Bronx. At the time of the accident plaintiff was a first grade fireman having been in the fire department four years. He was thrown from the rear step of the truck and catapulted through the air and against the corner curbstone. He was frightfully injured, but, fortunately, his head was protected by a fire helmet. At the time he was about thirty-five years of age, weighing 180 pounds and had never been sick. Nearly three hours after the accident he is described as being " in severe shock " by a hospital physician and as having " multiple contusions and abrasions of the body " as well as temporary injuries about one eye. His permanent injuries are so severe that they render him incapable of doing active duty as a fireman, thus depriving him of the opportunity of going to higher rank or even to the highest rank in his chosen field. The injuries may be briefly referred to as the annihilation of the natural hip joint on one side, due to crushing of the bone, and an incurable dislocation of one shoulder. He has suffered most cruelly and will continue to suffer permanently whenever he puts his weight on the injured side or has to bring his shoulder back into place, a daily incident. The physicians applied to his foot a traction, thirty-five pounds of weights over a pulley, pulling the leg down. That was on him night and day for a month. He was then set in a cast and placed on a fracture board, remaining thus for two months. During that period his pain was somewhat relieved by opiates, the administration of which, however, could not be safely continued. He has been subject to operations and treatment of an extreme character and has been to a very great degree permanently incapacitated. He will be compelled to wear a brace, weighing eight and one-half pounds, indefinitely.

While the verdict is seemingly for a large amount, $50,000, it is not, in my opinion, comparable with plaintiff's suffering, his injuries and lost opportunities. Other men who have served as he served have ascended to the highest rank in the fire department. A witness at the trial, one of his companions on the truck at the time of the accident, then in the same grade of service with plaintiff, is now a lieutenant.

Defendant finds error in references at the trial to the type of trolley car in the collision, asserting that there was nothing to show

that the absence of a conductor contributed to the accident. But there was no contention that the failure to have a conductor on the car was the proximate cause of the accident.

The motorman testified that he had stopped at One Hundred and Thirty-ninth street, where a number of passengers alighted; that he did not stop again until the collision occurred; that he slowed down about the middle of the block as he approached One Hundred and Forty-first street; that when he was about seventy-five feet from the corner he looked toward the west as far as he could see, about thirty feet along One Hundred and Forty-first street, on which the fire apparatus was approaching. Seeing nothing, he put on his power again. He says he did not hear or see the fire department truck until it was thirty feet away. Its driver slowed down as it approached the street intersection. The driver saw the trolley car, which, he says, " was coming very slow, apparently coming to a stop," so he increased speed and went ahead.

It was argued for plaintiff that the motorman of the trolley car may have become excited and stepped hard on the pedal, thus accelerating its speed instead of stopping by releasing the pedal from pressure. What he heard, saw or did were vitally in question. The probabilities bearing thereon were essentially to be considered by the jury. The jury was properly allowed to consider various features of operation of the particular car which struck the fire truck. It was of the low level, one-man type, where the attendant-operator *sits* inside the car at the front end toward the left so as to allow the right to be used by passengers entering or leaving. Plaintiff's counsel was well within his rights in calling the jury's attention to the difference in command of view and in control of operation between this type of car and the conductor type, where the motorman may stand up at the front center. The motorman himself indicated that the view other than straight ahead, or nearly so, would be obstructed on the trolley car. Nor was there error in permitting plaintiff's counsel to call attention to the manner of operation. It was a car weighing 2,400 pounds, thirty-five feet in length over all. When proceeding along slowly its speed would be checked or accelerated by easing or increasing the pressure of the left foot on the mechanism. The possibility that in a moment of excitement the motorman might press his foot down instead of raising it was properly before the jury. So also were all the surrounding circumstances, including the manifold duties of the one man who had sole charge of not only driving the car, but of attending to passengers, opening the doors for them to enter and depart, seeing that they paid their fares, attending to transfers and, perchance, requesting payment of fare or answering questions. This

sole functionary must use his left hand to turn on the power, by means of a hand controller, while the foot pedal is worked by his left foot, depressing it, or, if it be desired to stop, raising it.   There are also to be attended to an air-brake, the bell, the watching of passengers for their safety and for their fares, making change and pushing a button to open or close the door.   These possible circumstances, as well as the fact that the car could not be stopped in less than forty-five feet when going but ten miles an hour along the city streets, where vigilance and alertness of eye and ear are constantly required to safely operate any vehicle, were all properly commented on.

Such comment does not imply negligence as a necessary element of operation, or that liability follows operation.   These circumstances are elements in the entire operation which the jury was required to consider in determining the issue of negligence.

The motion will be denied.   Settle order on notice.

Ordered accordingly.